## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

Yadira Pagan, individually and on
behalf of all others similarly situated,

|                                       |                          |
| ------------------------------------- | ------------------------ |
| Plaintiff,                            |                          |
| - against -                           | Class Action Complaint   |
| Walmart Inc.,                         |                          |
| Defendant                             | Jury Trial Demanded      |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.    Walmart Inc. ("Defendant") sells saltine crackers under the Great Value brand represented as "Made With Whole Grain" with the brown hue reflecting the color of darker whole grains ("Product").





2.     The last two decades have witnessed historic increases in Americans' consumption of foods containing whole grains.

3.     This is because of scientific and nutritional consensus that they provide health benefits not available from non-whole grains.

4.     This was recognized in the 2015-2020 Dietary Guidelines for Americans

published by the United States Department of Agriculture ("USDA"), which recommended that at least half of all grains eaten each day be whole grains, for a total of 48g of whole grains and 28g of fiber.

5.      Whole grains include the original three grain components of the endosperm, bran and germ.

6.      The darker color of the bran and germ, compared to the pearly white endosperm is why whole grain products have a brownish hue, compared to grain products made only from the endosperm, or "white flour."

7.      Bran and germ contain important nutrients like fiber, vitamins, minerals, and antioxidants, such as iron, zinc, folate, magnesium, thiamin, niacin, selenium, riboflavin, manganese, copper, vitamin A, vitamin E, vitamin K and vitamin B6.

8.      In contrast, non-whole grains are processed to remove the bran and germ, which contain fiber and most other nutrients, leaving only the starchy endosperm.

9.      These refined grains then add back previously removed iron and B vitamins, such as thiamin, riboflavin, niacin, and folic acid, which is why this type of flour is called "enriched flour."

10.      However, refined grains do not add back fiber, vitamin E, vitamin B6, vitamin K, magnesium, manganese, potassium, phosphorus, copper, calcium and selenium.

11.      According to the Food and Drug Administration ("FDA"), the Federal

3

Trade Commission ("FTC") and non-profit public health nutrition watchdog, the Center for the Science in Public Interest ("CSPI"), Americans' intentions to consume more whole grain is stymied by the many ways companies can mislead them.[1]

12.   According to CSPI, "companies exploit the whole grain halo by tacking it on products mostly made with white refined flour."[2]

13.   That "Consumer confusion about wholegrain content" has not abated was confirmed by a recent study in the journal Public Health Nutrition.[3]

14.   One nutrition professor remarked, "Even people with advanced degrees cannot figure out how much whole grain" is in products represented to consumers as whole grain.

15.   Despite labeling the Product as "Made With Whole Grain," the amount of whole grains, in absolute and relative terms compared to refined grains, is de minimis or negligible.

16.   This is shown through the ingredient list on the side of the package, showing the most predominant ingredient is not whole grain wheat flour but "UNBLEACHED ENRICHED FLOUR."

---

[1] In the Matter of Draft Guidance for Industry and FDA Staff: Whole Grains Label Statements, Docket No. 2006-0066 Comments of the Staff of the Bureau of Consumer Protection, the Bureau of Economics, and the Office of Policy Planning of the Federal Trade Commission April 18, 2006.
[2] CSPI, Comments to 2006 FDA Draft Guidance on Whole Grain Labeling.
[3] Parke Wilde, et al., "Consumer confusion about wholegrain content and healthfulness in product labels: a discrete choice experiment and comprehension assessment," Public Health Nutrition 23.18 (2020): 3324-3331.

4

INGREDIENTS: UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), WHOLE WHEAT FLOUR, SOYBEAN OIL AND/OR PALM OIL*, SALT, INVERT SUGAR, SUGAR, SODIUM BICARBONATE (LEAVENING), YEAST WITH ASCORBIC ACID, MALTED BARLEY FLOUR.
*ADDS A DIETARILY INSIGNIFICANT AMOUNT OF SATURATED FAT

INGREDIENTS: UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), WHOLE WHEAT FLOUR, SOYBEAN OIL AND/OR PALM OIL*, SALT, INVERT SUGAR, SUGAR, SODIUM BICARBONATE (LEAVENING), YEAST WITH ASCORBIC ACID, MALTED BARLEY FLOUR.

 *ADDS A DIETARILY INSIGNIFICANT AMOUNT OF SATURATED FAT.

17.   Though "WHOLE WHEAT FLOUR" is listed second, its absolute and relative amount compared to its refined grain content is de minimis and/or negligible, significantly less than consumers expect.

18.   This is confirmed by the fiber content shown on the Nutrition Facts as about 1g per serving, or 3% of the Daily Value.

19.   Even purchasers who review the ingredient list will not know that the amount of whole grains is de minimis, in absolute and relative amounts.

20.   Those without advanced knowledge of nutrition will be unable to reverse calculate the amount and proportion of whole grains based on fiber content.

21.   This is because the listing of ingredients does not tell purchasers the proportion of whole wheat flour to unbleached enriched flour.

22.   Such scrutinizing consumers would not even know how many grams per serving of the Product are refined relative to whole grains.

23.   The result is that well-intentioned consumers will be unable to adhere to the Dietary Guidelines, which recommend they make half their grains whole.

24.   The statement "Made With Whole Grain" is misleading because even though the Product contains some whole grains, it is not a nutritionally significant amount, understood as sufficient to meaningfully achieve the Dietary Guidelines' recommendations of daily whole grain consumption.

25.   The independent Whole Grains Council even recommended that foods should not make whole grain claims unless they provide 8g whole grains per serving, which the Product does not.[4]

26.   By touting the Product as "Made With Whole Grain" yet omitting the amount of whole grains per serving relative to the recommended consumption amounts, consumers are misled to believe they are consuming more whole grains than they really are.

27.   The result is that purchasers will unknowingly consume more of the

---

[4] Elaine Watson, What should the criteria be for whole grain labeling statements?, Bakery & Snacks, Aug. 20, 2013.

Product to get more whole grains, even though this results in consumption of excess refined grains.

28.   The addition of "MALTED BARLEY FLOUR" furthers consumer deception with respect to the whole grain content.

29.   This is an ingredient known to industry to add a dark brown color without any effect on taste or texture.

30.   Since studies have confirmed that consumers seeking whole grain foods are strongly influenced by their darker color due to the presence of bran, they will expect their brownish color is based on containing a non-de minimis amount of whole grains, when this would be false.

## JURISDICTION AND VENUE

31.   Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

32.   The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

33.   Plaintiff is a citizen of Florida.

34.   Defendant is a citizen of Delaware and Arkansas.

35.   The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

36.   The members of the proposed class Plaintiff seeks to represent are more

than 100, because the Product is sold at hundreds of Defendant's stores across this State.

37.   Venue is in the Orlando Division in this District because Plaintiff resides in Brevard County and a substantial part of the events or omissions giving rise to these claims occurred in Brevard County, her purchase and consumption of the Product in reliance on the labeling identified here.

## PARTIES

38.   Plaintiff Yadira Pagan is a citizen of Brevard County, Florida.

39.   Defendant Walmart Inc. is a Delaware corporation with a principal place of business in Bentonville, Arkansas, Benton County.

40.   Walmart is an American multinational retail corporation that operates a chain of over 5,000 supercenters throughout the nation, selling everything from furniture to groceries.

41.   While Walmart sells leading national brands, they sell hundreds of products under their private label Great Value brand.

42.   Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

43.   Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

44.   Products under the Great Value brand have an industry-wide reputation for quality and value.

45.   In releasing products under the Great Value brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

46.   Defendant can get national brands to produce its private label items due its loyal customer base and tough negotiating.

47.   That Great Value branded products met this high bar was proven by focus groups, which rated them above the name brand equivalent.

48.   Private label products generate higher profits for retailers because national brands spend significantly more on marketing, contributing to their higher prices.

49.   A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

50.   Private label products under the Great Value brand benefit by their association with consumers' appreciation for the Walmart brand overall.

51.   The development of private label items is a growth area for Walmart, as they select only top suppliers to develop and produce Walmart products.

52.   The Product is available to consumers from Defendant's retail stores and

its website.

53.   Plaintiff is like many Americans who wants to consume more whole grains because she knows they are better for her than non-whole grains.

54.   Plaintiff read and relied on the label statements of "Made With Whole Grain" and the darkened hue of the crackers pictured on the label to believe the Product contained a predominant amount of whole grains, was a nutritionally significant source of whole grains, contained more fiber than it did, and would help her adhere to the Dietary Guidelines.

55.   Plaintiff expected the Product was predominantly whole grains or at least contained a non-de minimis or negligible amount of whole grains.

56.   Plaintiff was unaware the Product contained a de minimis and/or negligible amount of whole grains in absolute and relative terms.

57.   Plaintiff relied on the words, terms coloring, descriptions, layout, packaging, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

58.   Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at Walmart locations in Brevard County, between August 2019 and the present.

10

59.   Plaintiff bought the Product at or exceeding the above-referenced price.

60.   Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

61.   Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

62.   As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $1.52 for 453g or four stacks of crackers, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

63.   Plaintiff paid more for the Product than she would have paid had she known the representations were false and misleading, as she would not have bought it or paid less.

64.   Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its composition.

65.   Plaintiff is unable to rely on the labeling and representations not only of this Product, but other foods represented as containing whole grains on the front

11

label, because she is unsure whether those representations are truthful.

66.   If Defendant's labeling were to be truthful, Plaintiff could adequately rely on the labeling of other products promoting their whole grain content.

## CLASS ALLEGATIONS

67.   Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following class:

> **Florida Class:** All persons in the State of Florida who purchased the Product during the statutes of limitations for each cause of action alleged.

68.   Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

69.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

70.   Plaintiff is an adequate representative because her interests do not conflict with other members.

71.   No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

72.   Individual actions would risk inconsistent results, be repetitive and are

impractical to justify, as the claims are modest relative to the scope of the harm.

73.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

74.    Plaintiff seeks class-wide injunctive relief because the practices continue.

## CAUSES OF ACTION

## COUNT I

## Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*

75.    Plaintiff incorporates by reference preceding paragraphs 1-30.

76.    Plaintiff brings this claim on her own behalf and on behalf of each member of the Florida Class.

77.    Defendant violated and continues to violate Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of its business.

78.    Plaintiff read and relied on the label statements of "Made With Whole Grain" and the darkened hue of the crackers pictured on the label to believe the Product contained a predominant or at least a significant amount of whole grains, was a nutritionally significant source of whole grains, contained more fiber than it

13

did, and would help her adhere to the Dietary Guidelines.

79. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions, because the relative and absolute amount of whole grains was de minimis or negligible.

80. The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the general public into believing that the Product's grain content was predominantly or significantly from whole grains instead of refined grains.

81. Plaintiff and class members relied upon these representations and omissions in deciding to purchase the Product.

82. Plaintiff's reliance was reasonable because of Defendant's reputation as a trusted and reliable company, known for its high-quality products, honestly marketed to consumers.

83. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

84. Defendant's conduct offends established public policy and is immoral, unethical, oppressive, and unscrupulous to consumers.

85. Plaintiff and class members are entitled to damages in an amount to be proven at trial.

86. Defendant should also be ordered to cease its deceptive advertising and

should be made to engage in a corrective advertising campaign to inform consumers that the Product is predominantly non-whole grains instead of whole grains.

## COUNT II

### False and Misleading Adverting,
### Fla. Stat. § 817.41

87.   Plaintiff incorporates by reference preceding paragraphs 1-30.

88.   Plaintiff brings this claim on her own behalf and on behalf of each member of the Florida Class.

89.   Defendant made misrepresentations and omissions of material fact, that the Product's grain content was predominantly or significantly from whole grains instead of refined grains, through its advertisements and marketing, through various forms of media, product descriptions, and targeted digital advertising.

90.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

91.   Defendant knew that these statements were false.

92.   Defendant intended for consumers to rely on its false statements for the purpose of selling the Product.

93.   Plaintiff and class members did in fact rely upon these statements.

94.   Reliance was reasonable and justified because of Defendant's reputation as a trusted and reliable company, known for its high-quality products, honestly

marketed to consumers.

95.   As a result of Defendant's misrepresentations, Plaintiff and class members suffered damages in the amount paid for the Product.

96.   Plaintiff and class members are entitled to damages and injunctive relief as set forth above.

## COUNT III

### Breaches of Express Warranty,
### Implied Warranty of Merchantability/Fitness for a Particular Purpose and
### Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

97.   Plaintiff incorporates by reference preceding paragraphs 1-30.

98.   The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that its grain content was predominantly or significantly from whole grains instead of refined grains.

99.   Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

100. Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as foods containing a predominant or at least a significant amount of whole grains, nutritionally significant sources of whole grains, non-de minimis amounts of fiber, and whose consumption would help adherence to

16

the Dietary Guidelines, and developed its marketing and labeling to directly meet those needs and desires.

101. The representations were conveyed in writing and promised the Product would be defect-free, and Plaintiff understood this meant that its grain content was predominantly or significantly from whole grains instead of refined grains.

102. Defendant affirmed and promised that the Product's grain content was predominantly or significantly from whole grains instead of refined grains.

103. Defendant described the Product so Plaintiff and consumers believed its grain content was predominantly or significantly from whole grains instead of refined grains, which became part of the basis of the bargain that it would conform to its affirmations and promises.

104. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

105. This duty is based on Defendant's outsized role in the market for this type of product, custodian of the Great Value brand, a trusted seller of products for decades.

106. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

107. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express

17

and implied warranties associated with the Product.

108. Defendant received notice and should have been aware of these issues due to complaints by third parties, including regulators, academics, competitors, and consumers, to its main offices, and by consumers through online forums.

109. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

110. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if its grain content was predominantly or significantly from whole grains instead of refined grains.

111. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected its grain content was predominantly or significantly from whole grains instead of refined grains and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

## COUNT IV

### Fraud
### (Fed. R. Civ. P. 9(b) Allegations)

112. Plaintiff incorporates by reference preceding paragraphs 1-30.

18

113. Defendant misrepresented that the Product's grain content was predominantly or significantly from whole grains instead of refined grains.

114. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

115. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

116. To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

117. WHO: Defendant, Walmart, made material misrepresentations and/or omissions of fact in its advertising and marketing of the Product by representing that the grain content was predominantly or significantly from whole grains instead of refined grains.

118. WHAT: Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Product's grain content was predominantly or significantly from whole grains instead of refined grains.

119. Defendant omitted that the Product contains a de minimis and/or

negligible absolute and relative amount of whole grains compared to refined grains.

120. Defendant knew or should have known this information was material to all reasonable consumers and impacts their purchasing decisions.

121. Yet, Defendant has and continues to represent that the Product's grain content was predominantly or significantly from whole grains instead of refined grains.

122. WHEN: Defendant made material misrepresentations and/or omissions detailed herein, including that the Product's grain content was predominantly or significantly from whole grains instead of refined grains, continuously throughout the applicable Class period(s) and through the filing of this Complaint.

123. WHERE: Defendant's material misrepresentations and omissions, that the Product's grain content was predominantly or significantly from whole grains instead of refined grains, were made in the advertising and marketing of the Product, on the front of the packaging which all consumers buying it inevitably see and take notice of.

124. HOW: Defendant made written and visual misrepresentations and omissions in the advertising and marketing of the Product, that its grain content was predominantly or significantly from whole grains instead of refined grains

125. As such, Defendant's representations are false and misleading.

126. And as discussed in detail throughout this Complaint, Plaintiff and class

members read and relied on Defendant's representations and omissions before purchasing the Product.

127. WHY: Defendant misrepresented that the Product's grain content was predominantly or significantly from whole grains instead of refined grains for the express purpose of inducing Plaintiff and class members, who are on the lookout for foods which contain significant and non-de minimis amounts of whole grain, to purchase the Product at a substantial price premium.

128. As such, Defendant profited by selling the misrepresented Product to thousands of consumers throughout the State of Florida.

## COUNT V

## Unjust Enrichment

129. Plaintiff incorporates by reference preceding paragraphs 1-30.

130. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## JURY DEMAND AND PRAYER FOR RELIEF

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the Class;

21

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Awarding monetary, statutory, and/or punitive damages pursuant to applicable laws;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated:   July 10, 2023

Respectfully submitted,

/s/ *William Wright*
The Wright Law Office, P.A.
515 N Flagler Dr Ste P300
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

*Lead Counsel for Plaintiff*

Sheehan & Associates, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Pro Hac Vice* Application Forthcoming